IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Hiscox Insurance Company, Inc., | Case No. 3:24-cv-03245-JDA |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Linda Pender; Abraham Russell; D. Ashford Trucking, LLC; Clover Abercrombie; Abercrombie Insurance Services, | |
| Defendants. | |

This matter is before the Court on a motion for partial judgment on the pleadings and to dismiss filed by Defendant Linda Pender ("Pender") [Doc. 41] and joined by Defendants Clover Abercrombie ("Abercrombie") and Abercrombie Insurance Services ("Abercrombie Insurance") [Doc. 42 at 1, 7].[1] Plaintiff, the professional liability insurer for Abercrombie Insurance, responded to the motion to dismiss on November 22, 2024. [Doc. 45]. Pender filed a reply on December 17, 2024. [Doc. 48.] For the reasons stated below, the Court denies Pender's motion.

## **BACKGROUND**[2]

This declaratory judgment action arises out of a lawsuit brought by Pender in the Richland County Court of Common Pleas. [Doc. 38 at 1.] The facts leading up to that action are as follows.

---

[1] A Clerk's entry of default has been entered as to Defendants Abraham Russell and D. Ashford Trucking, LLC. [Doc. 53.]

[2] The facts included in this Background section are taken directly from the Second Amended Complaint [Doc. 38] and its attachments.

On August 24, 2021, Pender and Defendant Abraham Russell ("Russell"), a driver for Defendant D. Ashford Trucking, LLC ("Ashford Trucking"), were involved in a motor vehicle accident (the "Accident"). [*Id.* ¶ 16.] Abercrombie, an insurance producer who operates Abercrombie Insurance, has admitted that, at some point before the Accident, he accepted a premium payment from Ashford Trucking for a liability insurance policy through Liberty Mutual Insurance Company ("Liberty Mutual") to cover the negligent acts of Ashford Trucking's drivers. [*Id.* ¶¶ 13, 17, 18; Doc. 38-4 at 1.] However, Abercrombie has admitted that he never bound coverage, leaving Ashford Trucking uninsured at the time of the Accident. [Docs. 38 ¶ 18; 38-4 at 1.] Liberty Mutual declined coverage for the Accident. [Doc. 38 ¶ 19.]

In April 2022, Plaintiff issued to Abercrombie Insurance a professional liability errors and omissions insurance policy, Policy Number P100.205.151.3 (the "Policy"), covering a period from April 13, 2022, to April 13, 2023, with a retroactive date of April 13, 2020. [Doc. 38-1 at 3.] On June 22, 2022, Abercrombie submitted a claim to Plaintiff in which he explained:

> Claimant Linda Pender was involved in an[ ]automobile accident on 08/24/21 in which[ ]my Insured/Client Desmond Ashford was At[ ]Fault, contributed to the collision. I believe an[ ]error was made in my telling my client Desmond[ ]Ashford the policy was still active when in fact[ ]it had canceled prior to the Accident Date.

[Doc. 38-5 at 3.] Plaintiff alleges that after submitting the claim, Abercrombie failed to respond to inquiries from Plaintiff's claims examiner in June, July, and September 2022. [Doc. 38 ¶ 21.]

On October 13, 2022, Pender filed an action against Russell and Ashford Trucking related to the Accident in the Fairfield County Court of Common Pleas (the "Prior State

2

Court Action"). [Doc. 38-4 at 6–11.] On May 18, 2023, the court in the Prior State Court Action issued an order of judgment awarding Pender $1,799,358.43 in actual damages against Russell.[3] [*Id.* at 12–17.]

On May 31, 2023, Pender's counsel sent a letter to Plaintiff with a copy of the order of judgment and asked Plaintiff to pay the judgment. [Docs. 38 ¶ 25; 38-8.] Plaintiff maintains that its claims examiner reached out to Abercrombie again beginning in August 2023, but Abercrombie was unavailable and non-responsive and missed a scheduled meeting. [Doc. 38 ¶ 26.] On September 7, 2023, the claims examiner advised Abercrombie of the need to cooperate with the investigation, and on September 14, 2023, Plaintiff issued a reservation of rights to Abercrombie requesting copies of all documents and communications related to the Ashford Trucking policy and all communications with Pender's counsel since August 24, 2021. [*Id.* ¶¶ 27, 28; Doc. 38-9.] Plaintiff alleges that, despite multiple inquiries, Abercrombie failed to provide the requested information. [Doc. 38 ¶ 29.]

On February 14, 2024, the court in the Prior State Court Action issued an order directing the assignment to Pender of any and all legal and equitable rights Russell has against Abercrombie, Abercrombie Insurance, and Plaintiff. [Doc. 38-4 at 18–21.]

On March 14, 2024, Abercrombie executed an affidavit in which he averred as follows relating to the time period before August 24, 2021:

> I accepted a premium from Desmond Ashford's company (D. Ashford Trucking, LLC to insure the acts of insured Abraham Russell) and was responsible for binding insurance coverage. Due solely to my negligence, this coverage was never put into

---

[3] An entry of default was entered in the Prior State Court Action as to Russell on December 9, 2022. [Doc. 38-6.] Pender never served Ashford Trucking in the Prior State Court Action. [Doc. 38 ¶ 23.]

> place. At the time of this crash in August of 2021, Mr. Abraham Russell, the driver of D. Ashford Trucking, LLC appeared uninsured even though the premium had been paid. The uninsured status of the vehicle at the time of this crash was due solely to my negligence in not putting into place the coverage that had been selected and purchased.

[Doc. 38-4 at 1]. He further averred:

> I acknowledge that [the judgment against Russell] exists due to my negligence. It is further my understanding that Mr. Russell's claim against me and my firm for this negligence has been assigned to Ms. Pender. I now acknowledge that this debt improperly imposed upon Mr. Russell would not have been rendered absent my negligence.

[*Id.* (internal citation omitted).] On March 18, 2024, Pender's counsel submitted to Plaintiff a *Tyger River* demand letter[4] with a copy of Abercrombie's affidavit attached. [Doc. 38 ¶ 31.] According to Plaintiff, Abercrombie had never advised Plaintiff that he was in contact with Pender's counsel or that he had provided a sworn admission, and he did not obtain Plaintiff's consent before executing the affidavit. [*Id.*]

Plaintiff filed this action on May 29, 2024, seeking a declaratory judgment that it does not owe Abercrombie a defense or indemnification in any lawsuit brought by Pender. [Doc. 1.] On September 9, 2024, Pender, as Russell's assignee, filed an action against Abercrombie, doing business as Abercrombie Insurance, in the Richland County Court of Common Pleas (the "Pending State Court Action"), alleging negligence, breach of contract, and negligent misrepresentation. [Doc. 38-2.] On October 25, 2024, Plaintiff filed its Second Amended Complaint in this action, seeking a declaration that the Policy

---

[4] *Tyger River Pine Co. v. Maryland Casualty Co.*, 170 S.E. 346 (S.C. 1933), is "South Carolina's seminal bad faith case," *Hood v. United Servs. Auto Ass'n*, 910 S.E.2d 767, 771 (S.C. 2025), in which the Supreme Court of South Carolina held that an insurer owes its insured a duty of settling claims if it is "the reasonable thing to do," *Tyger River*, 170 S.E. at 349.

4

does not provide for a defense or indemnification for the claims and damages asserted by Pender against Abercrombie in the Pending State Court Action because Abercrombie: (1) fraudulently withheld payment of the Liberty Mutual premiums; (2) withheld payment of the Liberty Mutual premiums to gain profit to which he was not entitled; and (3) breached his duty to cooperate with Plaintiff.  [Doc. 38.]

## APPLICABLE LAW

**Rule 12(b)(1) Standard**[5]

Dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure examines whether the pleading fails to state facts upon which jurisdiction can be founded.  A court may dismiss a case for lack of subject-matter jurisdiction on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (internal quotation marks omitted).

**Rule 12(b)(6) Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences,

---

[5] Although Pender does not reference Rule 12(b)(1) in her motion, she argues the Court lacks subject matter jurisdiction [Doc. 41-1 at 8], which is examined under Rule 12(b)(1).

unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

6

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

**Judgment on the Pleadings Standard**

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, a court should "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019) (internal quotation marks omitted). "Thus, [t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." *Integon Gen. Ins. v. Bartkowiak ex rel. Bartkowiak*, No. 7:09-cv-

03045-JMC, 2010 WL 4156471, at *2 (D.S.C. Oct. 19, 2010) (alteration in original) (internal quotation marks omitted). "When considering a motion for judgment on the pleadings, the court may consider the pleadings, exhibits attached thereto, documents referred to in the complaint that are central to the plaintiff's claims, and other materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, MDL No. 2333, 2013 WL 3207423, at *2 (D.S.C. June 24, 2013) (internal quotation marks omitted). A court should apply the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6), granting a motion for judgment on the pleadings "only if the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Lewis v. Excel Mech., LLC*, No. 2:13-cv-281-PMD, 2013 WL 4585873, at *2 (D.S.C. Aug. 28, 2013) (internal quotation marks omitted); *see also Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002) (noting that the standard applicable for motions made under Rule 12(c) is the same as for those made under Rule 12(b)(6)).

## **DISCUSSION**

Pender contends this action raises two separate issues: (1) whether Plaintiff must defend Abercrombie in the Pending State Court Action; and (2) whether Plaintiff must indemnify Abercrombie from any judgment received against him in the Pending State Court Action. [Doc. 41-1 at 1.] She asks the Court to dismiss or grant judgment on the pleadings with respect to Plaintiff's duty-to-defend claim because the Second Amended Complaint demonstrates on its face that Plaintiff has a duty to defend the Pending State Court Action. Pender also contends that the Court lacks subject matter jurisdiction to

8

entertain the declaratory judgment action because it does not present a ripe case or controversy, and, alternatively, argues the Court should abstain from exercising jurisdiction. [*Id.* at 6–10.] The Court first addresses subject matter jurisdiction and then turns to Pender's other arguments.

**Subject Matter Jurisdiction**

The Constitution limits the jurisdiction of federal courts to addressing "cases" and "controversies."[6] *See* U.S. CONST. art. III, § 2. The doctrine of ripeness "determines when a case or controversy is fit for federal judicial review [and] prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."[7] *Trustgard Ins. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019) (cleaned up). The Fourth Circuit explained in *Whitaker v. Monroe Staffing Services, LLC*, 42 F.4th 200, 206 (4th Cir. 2022):

> A case is not ripe for judicial determination "if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (citation and internal quotation marks omitted). In contrast, a case is ripe for judicial decision when the "controversy is final and not dependent on future uncertainties." *Id.* (citation omitted). Thus, when a claim is "presented in a clean-cut and concrete form," the issue is ripe for adjudication. *South Carolina,* [*v. United States*, 912 F.3d

---

[6] The Court notes that a case or controversy is also specifically required for courts to resolve a declaratory judgment action, as the statutes comprising the Declaratory Judgment Act authorize federal courts to "declare the rights and other legal relations of" interested parties "[i]n a case of *actual controversy* within its jurisdiction." 28 U.S.C. § 2201(a) (emphasis added); *see Delavigne v. Delavigne*, 530 F.2d 598, 601 (4th Cir. 1976) ("[T]he [Declaratory Judgment] Act does not supply its own jurisdictional base, and where jurisdiction is lacking, declaratory relief should be denied.").

[7] In addition to having its roots in the limits the Constitution places on federal court jurisdiction, the ripeness doctrine is drawn from "prudential reasons for refusing to exercise jurisdiction." *Reno v. Cath. Soc. Servs. Inc.*, 509 U.S. 43, 57 n.18 (1993).

9

> 720, 730 (4th Cir. 2019)] (citation omitted).  The plaintiff bears the burden of establishing ripeness.  *Doe*, 713 F.3d at 758.

"In reviewing a ripeness claim, [courts] consider (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018) (internal quotation marks omitted).  "An issue is not fit for review if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 188 (4th Cir. 2007) (internal quotation marks omitted).  "Whether the subject of a declaratory judgment action is a sufficiently live controversy rather than an abstract question is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." *Miller v. Augusta Mut. Ins.*, 157 F. App'x 632, 637 (4th Cir. 2005) (internal quotation marks omitted).

In *Trustgard*, the Fourth Circuit Court of Appeals distinguished duty-to-defend actions, which "address[] who [is] required to pay the costs of defending a suit prior to judgment," from duty-to-indemnify actions, which are "ordinarily . . . advisory when the insured's liability remains undetermined."  942 F.3d at 200.  Applying the reasoning in *Trustgard*, the Fourth Circuit has clarified that, "once a state court case is filed and an insured claims a defense, that claim – the duty-to-defend claim – becomes a concrete question, ripe for resolution by a federal court."[8]  *Liberty Mut. Fire Ins. v. Sutton*, No. 21-

---

[8] Although the Pending State Court Action had not yet been filed when this declaratory judgment action was filed, the Fourth Circuit has instructed that courts may consider "factual developments that occurred after the complaint was filed to determine whether [the plaintiff]'s claims [are] ripe for review." *Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022) (first alteration in original) (internal quotation marks omitted).

1277, 2022 WL 11112589, at *5 (4th Cir. Oct. 19, 2022).  In *Sutton*, the court addressed a situation where, like the instant case, an insurer sought a declaratory judgment addressing both its duty to defend and to indemnify.  *Id.*  The court explained that a duty-to-indemnify claim "ripens along with [a] duty-to-defend claim" when, under the applicable state law, a finding that the insured has no duty to defend necessarily means that the insured has no duty to indemnify.  *Id.*  Under South Carolina law,[9] "[i]f an insurer has no duty to defend, it necessarily has no duty to indemnify."  *Canopius US Ins. v. Middleton*, 202 F. Supp. 3d 540, 546 (D.S.C. 2016); *see also Kinsale Ins. v. Seaboard Ventures Inc.*, 670 F. Supp. 3d 272, 277 (D.S.C. 2023) (same).  Accordingly, both Plaintiff's duty-to-defend and duty-to-indemnify claims are ripe.[10]

---

[9] "A federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules." *Francis v. Allstate Ins.*, 709 F.3d 362, 369 (4th Cir. 2013).  Under South Carolina choice-of-law rules, an insurance policy is governed by the law of the state in which the policy was issued. *See Unisun Ins. v. Hertz Rental Corp.*, 436 S.E.2d 182, 184 (S.C. Ct. App. 1993).  Because the Policy was issued in South Carolina to an insured in South Carolina [Doc. 38-1], South Carolina law governs its interpretation and enforceability.

[10] Moreover, as argued by Plaintiff and will be discussed further below, Plaintiff's allegations as to why it does not have a duty to defend or indemnify Abercrombie stem from Abercrombie's alleged breaches of the Policy beginning as early as June 2022, when Abercrombie failed to respond to inquiries from Plaintiff's claims examiner [Doc. 38 ¶¶ 21, 69], until at least March 14, 2024, when Abercrombie executed an affidavit admitting to his negligence [*id.* ¶¶ 17, 18, 31, 32, 82; Doc. 38-4 at 1–2].  They also stem from the alleged prejudice Plaintiff has *already* suffered because of those breaches.  [*Id.* ¶¶ 79 (alleging, for example, that Plaintiff was denied the opportunity to complete a claim investigation and come to a final claim determination, to learn details about the Liberty Mutual policy Abercrombie failed to procure, and to negotiate a settlement with Pender); 84 (alleging, for example, that Abercrombie's admissions have already nullified potential defenses in the Pending State Court Action and weakened Plaintiff's settlement position).]  Accordingly, the issues raised by the Second Amended Complaint are not dependent on future uncertainties.

**Whether to Abstain from Exercising Discretionary Jurisdiction**

Pender also argues that, even if the Court were to conclude that this declaratory judgment action is ripe for adjudication, the Court should abstain from exercising jurisdiction. [Doc. 41-1 at 9–10.]

Under the Declaratory Judgment Act, a district court, in "a case of actual controversy within its jurisdiction, . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "A federal court has the discretion to decline to entertain a declaratory judgment action, but . . . the court must do so only for good reason." *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (internal quotation marks omitted). The Fourth Circuit has held that in declaratory judgment actions that have pending related state court proceedings, courts must consider whether "federalism, efficiency, and comity" counsel against exercising jurisdiction when the ongoing proceeding in state court overlaps with the federal case. *Penn-Am. Ins. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (internal quotation marks omitted). "To aid district courts in balancing the state and federal interests when a parallel state action is pending," the Fourth Circuit has articulated four factors, known as the "*Nautilus* factors," for consideration:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*United Capitol Ins. v. Kapiloff*, 155 F.3d 488, 493–94 (4th Cir. 1998) (citing *Nautilus Ins. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994) (citations omitted), *abrogated in part on other grounds by Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995)).

After considering the *Nautilus* factors, the Court concludes that they weigh in favor of exercising jurisdiction over this declaratory judgment action. As to the first factor, although South Carolina law governs the coverage issue and, therefore, South Carolina has some interest in having the issue decided in its courts, the Pending State Court Action will not address the coverage issues raised in this action because Plaintiff is not a party in the Pending State Court Action. *See Affirmative Ins. v. Williams*, No. 5:14-cv-4087-JMC, 2015 WL 3968436, at *8 (D.S.C. June 30, 2015) ("[S]ince the Underlying Actions will not address the issue of the Policy's coverage and the issues raised in the case at hand will not be raised in state court since Plaintiff is not a party to these suits, exercising discretion over these matters would be proper."). As to the second factor, because the coverage issue will not be litigated in the Pending State Court Action, Plaintiff would have to file a separate action to address the coverage issue, and there is no greater efficiency in state court. *See id.* As to the third factor, the risk of entanglement is low because this Court is being asked to determine whether Abercrombie breached conditions of the Policy whereas the causes of action in the Pending State Court Action allege Abercrombie's negligence, breach of the Ashford Trucking contract, and negligent misrepresentation.[11]

---

[11] More specifically, in the Pending State Court Action complaint, Pender alleges Abercrombie: (1) was negligent in failing to exercise due care in advising Ashford Trucking and its employees about liability insurance coverage, in responding to Ashford Trucking's desire for that coverage, and in obtaining coverage for Ashford Trucking and its employees; (2) breached his contract with Ashford Trucking by failing to obtain the liability insurance coverage he contracted to provide; and (3) negligently represented to

13

Although some factual considerations will be the same in the two actions, "there will not be such a redundancy that would create an unnecessary entanglement as the cases ultimately center on different issues." *Id.*  As to the fourth factor, the filing of this action does not appear to be procedural fencing, as this action was filed before the Pending State Court Action, and the issues raised here will not be decided in the Pending State Court Action.  *See id.* at *9; *Great Am. Ins. v. Gross*, 468 F.3d 199, 212 (4th Cir. 2006) (describing procedural fencing as when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum").  Accordingly, after weighing the *Nautilus* factors, the Court concludes that it is appropriate to exercise jurisdiction over this declaratory judgment action, and the Court now turns to the parties' arguments regarding Plaintiff's duty to defend.[12]

**Plaintiff's Duty to Defend**

Pender asserts that Plaintiff has failed to state a claim upon which relief may be granted and/or she is entitled to judgment on the pleadings with respect to Plaintiff's duty to defend because the Pending State Court Action alleges facts that demonstrate the possibility of a covered claim.  [Docs. 41-1 at 2, 6–7; 48 at 1–4.]  Plaintiff counters that it can disclaim coverage based on Abercrombie's breaches of Policy conditions and resulting prejudice in the two-year period leading up to the filing of the Pending State Court Action.  [Doc. 45 at 7–14.]

---

Ashford Trucking that he had procured liability coverage that he had not actually procured.  [Doc. 38-2 at 3–6.]

[12] The only arguments Pender raises for dismissal of Plaintiff's duty-to-indemnify claim are that the issue is not ripe and, in the alternative, that the Court should abstain from exercising jurisdiction over that claim.  [Doc. 41-1 at 2, 8–10.]

14

"[U]nder South Carolina law, the duty to defend arises when an underlying suit is brought against the insured with allegations that are arguably within the scope of the insurance policy's coverage." *Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 53 F. Supp. 3d 816, 828 (D.S.C. 2014) (citing *Allstate Ins. v. Wilson*, 193 S.E.2d 527, 530 (S.C. 1972)). "If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." *City of Hartsville v. S.C. Mun. Ins. & Risk. Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009). However, "[i]f the facts alleged in a complaint against [the] insured fail to bring a claim within policy coverage, [the] insurer has no duty to defend." *Id.* Additionally, "an insurer has no duty to defend an insured where the damage was caused for a reason unambiguously excluded under the policy." *B.L.G. Enters. v. First Fin. Ins.*, 514 S.E.2d 327, 330 (S.C. 1999). Therefore, "an insurer's duty to defend is not strictly controlled by the allegations in [the c]omplaint" but "may also be determined by facts outside of the complaint that are known by the insurer."[13] *USAA Prop. & Cas. Ins. v. Clegg*, 661 S.E.2d 791, 798 (S.C. 2008).

"Insurance policies are subject to the general rules of contract construction." *B.L.G. Enters.*, 514 S.E.2d at 330. "As a general rule, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in

---

[13] Pender contends that courts may look beyond the allegations of an underlying complaint to determine the insurer's duty to defend only "where facts undisputed between the parties clearly demonstrate a lack of coverage." [Doc. 48 at 2 (citing *USAA Prop. & Cas. v. Clegg*, 661 S.E.2d 791, 798 (S.C. 2008)).] Although *Clegg* was a case decided on undisputed facts, 661 S.E.2d at 794, the Court does not read the case to *require* undisputed facts for a court to consider facts outside of the complaint that are known by the insurer when determining whether there is a duty to defend, *see Greenwich Ins. v. Garrell*, No. 4:11-cv-2743-RBH, 2013 WL 869602, at *9 (D.S.C. Mar. 7, 2013) (denying summary judgment on a duty-to-defend claim and noting that the court must evaluate the issues "in light of facts outside of the complaint that are known by the insurer" (internal quotation marks omitted)).

15

contravention of public policy or some statutory inhibition." *Williams v. Gov't Emps. Ins.*, 762 S.E.2d 705, 712 (S.C. 2014).

Here, Plaintiff acknowledges that the allegations in the Pending State Court Action encompass those within the insuring agreement portion of the Policy; however, it maintains that it may disclaim coverage due to Abercrombie's breaches of the Policy's conditions, particularly his duties to cooperate and not to admit liability. [Doc. 45 at 5–13.] Accordingly, the Court need not address whether the allegations in the Pending State Court Action are within the scope of the Policy's coverage and, instead, turns to whether Plaintiff has sufficiently pled facts to plausibly allege it does not have a duty to defend based on Abercrombie's breaches of the Policy.

"[A]n insurer, seeking to relieve itself of liability because of the violation by the insured of a cooperation clause in the policy, has the burden of showing not only that the insured failed to cooperate within the meaning of the policy provision but that it was substantially prejudiced thereby." *Portrait Homes - S.C., LLC v. Pennsylvania Nat'l Mut. Cas. Ins.*, 900 S.E.2d 245, 272 (S.C. Ct. App. 2023) (alteration in original) (internal quotation marks omitted).

The Policy includes the following clauses:

> B. **INSURED DUTY TO COOPERATE**
>
> **You** shall have the duty to cooperate with **Us** in the defense, investigation and settlement of any **Claim**, including but not limited to:
>
> 1. upon request, submit to examination and interrogation under oath by **Our** representative;
> 2. attend hearings, depositions and trials as requested by **Us**;
> 3. assist in securing and giving evidence and obtaining the attendance of witnesses;

> 4. provide written statements to **Our** representative and meet with such representative for the purpose of investigation and/or defense; and
> 5. provide all documents **We** may reasonably require.
>
> C. **INSURED OBLIGATION NOT TO INCUR EXPENSE OR ADMIT LIABILITY**
>
> **You** shall not, except at **Your** own cost, make any payment, incur any expense, admit any liability, settle any **Claim** or assume any obligation without **Our** prior consent.

[Doc. 38-1 at 14.] The Second Amended Complaint alleges that Abercrombie breached these provisions by failing to respond to Plaintiff's attempts to gather information in June, July, and September 2022; failing to respond or provide documentation to Plaintiff when it reached out to Abercrombie in September, October, and November 2023 to investigate the Prior State Court Action and Abercrombie's failure to bind coverage for Ashford Trucking; failing to notify Plaintiff that he had been contacted by Pender, communicated with her, and provided the affidavit to her; and providing the affidavit to Pender. [Doc. 38 ¶¶ 69, 73, 75, 76, 82.] Accepting these allegations as true, as the Court must at this stage, Plaintiff has adequately pled that Abercrombie breached provisions of the Policy.[14]

Pender does not seem to argue that Plaintiff has failed to adequately plead that Abercrombie breached provisions of the policy. [*See generally* Docs. 41-1; 48.] Instead,

---

[14] The Court notes that, as discussed above, Pender contends the Court may not look beyond the allegations of the Pending State Court Action complaint to determine whether there is a duty to defend. [Doc. 48 at 2.] Although the Court disagrees with Pender's reading of *Clegg*, the Court notes that at least one of the breaches alleged by Plaintiff— that Abercrombie provided the affidavit to Pender—is undisputed. [Doc. 40 ¶¶ 16, 24, 52 (Pender's Answer, acknowledging the affidavit and admitting, upon information and belief, that the statements in it are true).]

17

she argues that it is premature for the Court to consider the question of whether those alleged breaches have substantially prejudiced Plaintiff because the outcome of the Pending State Court Action is not yet known.  [Docs. 41-1 at 8; 48 at 4–8.]  Plaintiff counters that it has already suffered prejudice based on Abercrombie's alleged breaches of the Policy, which predate the Pending State Court Action and are based on Abercrombie's conduct for almost two years before Pender filed the Pending State Court Action.  [Doc. 45 at 7–13.]

The Second Amended Complaint alleges that Plaintiff has been prejudiced by Abercrombie's failure to cooperate in an investigation in the following ways:

 a) [Plaintiff] was denied the opportunity to provide a defense for Russell in the [Prior State Court Action] and prevent the entry of default judgment;

 b) [Plaintiff] was denied the opportunity to provide a defense for Russell at the May 2, 2023, hearing on damages in the [Prior State Court Action] and reduce the size of the judgment;

 c) [Plaintiff] was denied, in general, the opportunity to complete a full claim investigation and come to a final claim determination;

 d) [Plaintiff] was denied the opportunity to learn the full details of the Liberty Mutual policy that Mr. Abercrombie allegedly failed to procure to determine if any negligent failure to procure caused the injuries allegedly sustained by [Ashford Trucking] (i.e., whether the policy, if [it] had been in effect, would have covered [Ashford Trucking] for Ms. Pender's loss in whole or part);

 e) [Plaintiff] was denied the opportunity to learn the full details of the Liberty Mutual policy that Mr. Abercrombie allegedly failed to procure to determine the amount of damages that would have been recoverable for Mr. Abercrombie's alleged wrongful acts (damages would have been limited, for example,

18

    by the limits of available insurance under the Liberty Mutual policy);

f)  [Plaintiff] was denied the opportunity to investigate whether the [failure to bind coverage] occurred before the Policy's retroactive date;

g)  [Plaintiff] was denied the opportunity to investigate whether the claim was timely reported as required under the Policy;

h)  [Plaintiff] was denied the opportunity to investigate whether the [failure to bind coverage] was motivated by fraud and/or desire for personal gain to which Mr. Abercrombie was not entitled;

i)  [Plaintiff] was denied the opportunity to investigate whether D. Russell Trucking and D. Russell Trucking's own negligence, if any, also resulted in the failure to bind the Liberty Mutual policy;

j)  [Plaintiff] was denied the opportunity to negotiate a more favorable settlement with Pender due to Abercrombie's full admission of liability;

k)  [Plaintiff] was denied the opportunity to provide Abercrombie counsel to advise Abercrombie concerning an affidavit apparently drafted by an opposing party;

l)  Abercrombie's admissions in his affidavit have undermined other bona fide defenses to Pender's claim against Abercrombie; and

m)  Other prejudice that may be uncovered once [Plaintiff] is able to conduct discovery.

[Doc. 38 ¶ 79.] The Second Amended Complaint further alleges that Plaintiff has been prejudiced by Abercrombie's admission of liability in his affidavit in the following ways:

a)  The unauthorized admissions nullify potential defenses to claims of Mr. Abercrombie's negligence and severely undermine potential arguments for D. Ashford's comparative fault;

19

      b)      The admissions were made at the behest of an adverse party without the benefit of legal counsel (which may have been provided had Mr. Abercrombie cooperated) and were thus drafted to maximally benefit the adverse party and maximally prejudice Mr. Abercrombie's defense;

      c)      The admissions have weakened [Plaintiff's] settlement position;

      d)      The admissions will prejudice the defense of any resulting litigation by providing conclusive evidence of Mr. Abercrombie's negligence or at the very least providing compelling impeachment evidence;

      e)      Other prejudice that may be uncovered once [Plaintiff] is able to conduct discovery.

[Doc. 38 ¶ 84.] Accepting these allegations as true, as the Court must at this stage, Plaintiff has adequately pled that it has been substantially prejudiced by Abercrombie's alleged breaches of provisions of the Policy. Accordingly, the Court concludes that Plaintiff has stated a plausible claim that it does not owe Abercrombie a duty to defend or to indemnify related to the Pending State Court Action.

## **CONCLUSION**

For the reasons set forth above, Pender's motion for partial judgment on the pleadings and to dismiss [Doc. 41] is DENIED.

IT IS SO ORDERED.

                                                                   s/ Jacquelyn D. Austin
                                                                   United States District Judge

September 29, 2025
Greenville, South Carolina